FARMER, APPELLEE, *v.* KELLEYS ISLAND BOARD OF EDUCATION, APPELLANT.

[Cite as *Farmer v. Kelleys Island Bd. of
Edn.* (1994), 70 Ohio St.3d 1203.]

(No. 93–441—Submitted May 16, 1994—Decided September 7, 1994.)

*Kalniz, Iorio & Feldstein, Ted Iorio* and *Ronald L. Rahal,* for appellee.

*Means, Bichimer, Burkholder & Baker Co., L.P.A.,* and *Kimball H. Carey;* and *Terry R. Griffith,* Erie County Prosecuting Attorney, for appellant.

*Richard J. Dickinson,* urging reversal for *amicus curiae,* Ohio School Boards Association.

DOUGLAS, J. On May 5, 1994, appellant moved this court to rehear "the merits of the decision entered herein on April 27, 1994." Appellant's motion and memorandum in support were concise, well presented and persuasive. Accordingly, I would treat appellant's motion for rehearing as a motion for clarification and grant it. In doing so, I would present the following as clarification.

In its memorandum in support of motion for rehearing, appellant says, in part:

"The Kelleys Island Board of Education is today taking the unusual step of requesting rehearing because it finds it quite possible that at least one Justice voting with the majority in this 4–3 decision may not have realized that the Board of Education in fact *exceeded* the statutory minimums of R.C. 3319.111.

"The basic statutory minimums of R.C. 3319.111 for teacher evaluation are simply this: that a teacher whose contract is expiring must be *evaluated* at least twice within certain time frames (R.C. 3319.111[A]) and *observed* at least four times—twice for each evaluation (R.C. 3319.111[B]).

"In the present case, it is undisputed that these statutory minimums were *exceeded* by the Kelleys Island Board of Education. Specifically, the Board's evaluator conducted four observations of the teacher (the statutory minimum) and provided *four* written evaluation reports (two more than the statutory minimum). While these facts were recognized by the majority opinion, the conclusion drawn is that the Board violated a mandate for a 'two-to-one ratio' between observations

and evaluations. In essence, the Board is faulted for doing its job *too* well, and providing the teacher more than the law requires in the way of written feedback." (Emphasis *sic* and footnote omitted.)

Clearly, appellant and all other persons likely situated are entitled to some clarification.

In this case (*Farmer v. Kelleys Island Bd. of Edn.* [1994], 69 Ohio St.3d 156, 630 N.E.2d 721), I concurred in the majority opinion. At the time of the issuing of the opinion, I agreed with the result and I am still of the same mind now. However, upon further reflection and a more careful reading of both R.C. 3319.11 and 3319.111, I now find that I do not agree with Part I of the opinion (the issue of superintendent recommendation). Further, I now more readily understand appellant's "evaluation" argument as decided by Part II of the opinion. Appellant's position that it "in fact exceeded the statutory minimums of R.C. 3319.111" is clearly arguable but maybe not technically correct, given that the statute is remedial in nature and, thus, entitled to a liberal interpretation. However, even if I changed my position with regard to the "evaluation" question, I would still concur with the decision of the majority *and*, more specifically, the judgments of both the court of common pleas and the court of appeals.

Each of the two issues needs, at least from my standpoint, clarification. In clarifying these two issues, the third issue—that of remedy (reinstatement) resolves itself.

I

"Evaluation—Observation"

Appellant-board's position is that it is being "faulted for doing its job too well." The confusion in this and companion cases arises because the terms "evaluation" and "observation" are being used interchangeably when they are, in fact, clearly different. The statute, R.C. 3319.111(B)(2), requires two "observations" for *each* of *two* required "evaluations." R.C. 3319.111(A). It is true that Charles Hoffman, the board-chosen individual who evaluated appellee, observed appellee on four separate occasions—October 10, 1990, January 22, 1991, March 12, 1991 and March 22, 1991. In reporting his findings, Hoffman issued what he labeled "evaluations" after each of his "observations." The October 10, 1990 "evaluation" was based *solely* on the same day (October 10, 1990) "observation." The same was true for the January 22, 1991 "evaluation," which never even referred to the October 10, 1990 "evaluation-observation." This apparent violation of R.C. 3319.111(A) and (B) led the trial court, the court of appeals and this court to the conclusion that there were not *two* observations and *one* evaluation received by appellee by the then-magic date of February 10, 1991 (former R.C. 3319.111[A] ).

This same sequence is also true for the second evaluation, which was due by April 10, 1991.

Obviously, this reading of the statutes can be attacked as technical. Conversely, the argument is made that the statutes are clear and precise and should be followed. Added to this latter argument is the liberal-interpretation requirement. It is on the basis that the statute was not precisely followed that I concurred with the majority in Part II of the opinion.

Accordingly, the board was not being "faulted for doing its job too well." The board was being faulted for not following the precise dictates of the statute, to wit, two observations for each of two required evaluations. The sentence in *Farmer, supra,* 69 Ohio St.3d at 159, 630 N.E.2d at 723, that "[t]he statute, therefore, requires a two-to-one ratio of observations to written evaluations," means, I believe, that the minimum statutory requirements are at least two evaluations based upon two observations for each of the evaluations and any *additional* evaluations need not comply with the two-observation rule.

## II

### Superintendent Recommendation

The second issue is where I part ways with both the appellant-board and Part I of the majority opinion in *Farmer.* Appellant and the majority opinion point out that the superintendent's *recommendation* that appellee's contract be *renewed* is of no significance. I now emphatically disagree.

In support of their position, the board and majority cite *Justus v. Brown* (1975), 42 Ohio St.2d 53, 71 O.O.2d 35, 325 N.E.2d 884, paragraph one of the syllabus. That case holds that it is a board of education that has the authority to employ teachers. Thus, the argument goes, it makes no difference what a superintendent recommends, since the sole and ultimate power on the question of teacher reemployment lies with the board. *Justus* did hold just that and that *was* the law—in 1975. Today, things are different because now the General Assembly has specifically spoken on the subject.

In 1961, Am.Sub.H.B. No. 227 was enacted by the General Assembly. The bill was signed by the Governor and became effective October 17, 1961. (129 Ohio Laws 1207.) Among the amendments to R.C. 3319.11, the General Assembly amended a paragraph which relates to *limited* contracts for teachers. The amended paragraph changed the then-existing 1959 law (R.C. 3319.11) by adding certain language. In part, the paragraph, with the language *added* being designated by emphasis, follows:

"Any teacher employed under a limited contract, *and not eligible to be considered for a continuing contract,* is, at the expiration of such limited

contract, deemed re-employed *under the provisions of this section* at the same salary plus an increment provided by the salary schedule unless the employing board, *acting on the superintendent's recommendation as to whether or not the teacher should be re-employed,* gives such teacher written notice of its intention not to re-employ him on or before the thirtieth day of April.   * * *"

In 1988, effective July 1, 1989, the General Assembly again amended R.C. 3319.11.   (142 Ohio Laws, Part II, 3356–3363.)   Extensive revisions were contained in Am.Sub.H.B. No. 330.   The law substantially changed R.C. 3319.11 and included changes which divided the section (R.C. 3319.11) into lettered and numbered divisions.   The parts of R.C. 3319.11 which pertain to *limited* contracts became R.C. 3319.11(*E* ).

For purposes of comparison with the portion of the 1961 law quoted above, I now quote the same portion of the 1989 law (R.C. 3319.11[E] ) as it appeared in Am.Sub.H.B. No. 330.   The emphasized material is that which has been added; the language deleted by the General Assembly is noted by a strike-through.

"Any teacher employed under a limited contract, and not eligible to be considered for a continuing contract, is, at the expiration of such limited contract, deemed re-employed under the provisions of this ~~section~~ *division* at the same salary plus any increment provided by the salary schedule unless *evaluation procedures have been complied with pursuant to division (A) of section 3319.111 of the Revised Code and* the employing board, acting ~~on~~ *upon* the superintendent's *written* recommendation ~~as to whether or not~~ *that* the teacher ~~should~~ *not* be re-employed, gives such teacher written notice of its intention not to re-employ him on or before the thirtieth day of April.   * * *"

Several things become immediately apparent when the 1989 law is compared with previous pronouncements of the General Assembly on this specific subject and, in particular, the 1961 law which was amended by the 1989 law.

As previously indicated, in the 1989 revision, the General Assembly divided R.C. 3319.11 into lettered and numbered parts.   The part pertaining to limited contracts is now known as R.C. 3319.11(*E* ).   The subsequent changes to be discussed below are in division "(E)" itself.   The first is the striking of the word "section" and substituting therefor the word "division."   This change is important because division "(E)" is now a self-contained unit—that is, no reference to any other section or division is necessary or permitted to glean the intention of the General Assembly on the subject discussed therein.

Next, the General Assembly added language concerning "evaluation procedures" and I have already discussed the effect of this language in Part I of this clarification.   Incidentally, "evaluation procedure" language was also added to R.C. 3319.11(A), (B)(2), (C)(3), (D) and (G)(7).

Then, the legislative body did something else in division (E). In providing for a superintendent's recommendation, it amended the phrase "acting on the superintendent's recommendation as to whether or not the teacher should be re-employed" to now read: "acting upon the superintendent's written recommendation that the teacher *not be re-employed.*" (Emphasis added.)

Accordingly, before a board can decide that a teacher employed under a limited contract is not to be reemployed, two conditions precedent must exist. First, evaluation procedures must have been complied with, *and* second the board must have a written recommendation of the superintendent that the teacher *not* be reemployed. In this case (*Farmer*), Superintendent Richard Acierto recommended that Farmer's contract *be* renewed; thus, there was *no* recommendation of the superintendent (as required by the statute) *not* to renew.

This may come as a surprise to many of us, but it *is* what the law says. I anticipate two arguments against this reading of the statute. First, the case of *Justus v. Brown, supra,* will be cited for the proposition that the school board has the ultimate authority to hire and fire teachers—a concept with which I personally agree. However, in *1975,* when *Justus* was decided, the current R.C. 3319.-11(E) was not in existence. Thus, *Justus* could not have decided the law as it exists today.

Second, I anticipate the argument that the General Assembly just could not have meant what it said. There are three answers to this argument. First, it makes no difference what the General Assembly meant to say. It is what it said that this court must apply. Second, given the legislative history of R.C. 3319.11 from 1953, 1959, 1961 and now 1989, I do not believe there was any mistake. Third, and most important, if the General Assembly had wanted to give a school board veto power over a superintendent's recommendation to renew a limited-contract teacher, it certainly knew how to do that.

R.C. 3319.11(B)(1) states, in part, that "[u]pon the recommendation of the superintendent that a teacher eligible for continuing service status be reemployed, a continuing contract shall be entered into between the board and the teacher *unless the board by a three-fourths vote of its full membership rejects the recommendation of the superintendent.*" (Emphasis added.) R.C. 3319.11(C)(3) states, in part, that "[a] board of education *shall not reject* a superintendent's recommendation, made pursuant to division (C)(1) of this section, of an extended limited contract for a term not to exceed two years *except by a three-fourths vote of its full membership.*" (Emphasis added.)

Division (E) of R.C. 3319.11, the *division* we are dealing with, has *no* such language, and in fact division (E) says that these specific matters are to be determined "under the provisions of this *division.*" (Emphasis added.) Thus, this case should have been over after a determination was made pursuant to R.C.

3319.11(E) (the superintendent-recommendation provision). Appellee Farmer was entitled to her contract and the evaluation procedures of R.C. 3319.111(A) and (B) would never have come into play. Farmer was entitled to reinstatement and back pay and the majority opinion is correct in so holding.

## III

### Remedy Issue

Much is made in this and the companion cases concerning the remedy issue. The school boards involved, *amicus curiae* Ohio School Boards Association, and the dissents in this case and *Naylor v. Cardinal Local School Dist. Bd. of Edn.* (1994), 69 Ohio St.3d 162, 630 N.E.2d 725, point out that even if there was an error concerning "evaluation-observation," the remedy is not reinstatement. The dissents conclude that R.C. 3319.11(G)(7) permits reinstatement *only* when there is a violation of R.C. 3319.111(*A* ). The argument is that the violation in these cases was noncompliance with R.C. 3319.111(*B* ) and, therefore, by the specific terms of R.C. 3319.11(G)(7), there is to be no reinstatement. This argument fails for at least three reasons.

First, R.C. 3319.111(A) says that a board "shall evaluate such a teacher in compliance with the requirements of this *section.*" (Emphasis added.) The *section,* as we have seen, means all of R.C. 3319.111—not just part of it. This, of course, includes *division* (B) of R.C. 3319.111.

Second, the first paragraph of R.C. 3319.11(G)(7) (before we ever examine the second paragraph which contains the reference to division "[A]" of R.C. 3319.111) states that "[a] teacher may appeal * * * on the grounds that the board has not complied with the provisions of section * * * 3319.111 * * * of the Revised Code." In the clause providing for appeal, there is *no* reference to division "(A)" or "(B)" of R.C. 3319.111!

Third, and most importantly, the dissents overlook R.C. 3319.11(A)(1), which specifically incorporates division "(B)" of R.C. 3319.111 into the term "evaluation procedures"—the very term (evaluation) used in R.C. 3319.111(A).

## IV

### Conclusion

For the reasons set forth herein, I would convert appellant's motion for rehearing to one for clarification. I would then grant the motion for clarification and clarify our holding in *Farmer* in accordance with the foregoing.

A.W. SWEENEY, WRIGHT, F.E. SWEENEY and PFEIFER, JJ., concur.

MOYER, C.J., and DESHLER, J., concur in part and dissent in part.

DANA A. DESHLER, JR., J., of the Tenth Appellate District, sitting for RESNICK, J.

MOYER, C.J., concurring in part and dissenting in part. I concur in the substance of Part I of Justice Douglas's clarification regarding the ratio of observations to evaluations that the statute contemplates. Because I still believe, however, that only a violation of R.C. 3319.111(A), but not of R.C. 3319.111(B), is a ground for reinstatement, I continue to dissent as to the result reached by the court. Furthermore, Parts II and III of the clarification go beyond the scope of the issue raised in appellant's motion. They should therefore be considered dicta only, and I express no opinion as to them.

DESHLER, J., concurs in the foregoing opinion.