[This opinion has been published in *Ohio Official Reports* at 75 Ohio St.3d 69.]

SNYDER, APPELLANT, *v.* MENDON-UNION LOCAL SCHOOL DISTRICT BOARD OF

EDUCATION, APPELLEE.

[Cite as *Snyder v. Mendon-Union Local School Dist. Bd. of Edn.*,

1996-Ohio-138.]

*Schools—Teachers—Failure of board of education to comply with observation requirements of R.C. 3319.111(B)(2) constitutes a failure to comply with evaluation requirements of R.C. 3319.111(A)—Failure to comply with R.C. 3319.111(A) reverses board's decision not to re-employ a teacher under R.C. 3319.11(G)(7)—Back pay of teacher whose contract was not properly nonrenewed begins to accumulate, when.*

(No. 94-1098—Submitted at the Van Wert Session October 25, 1995—Decided

March 4, 1996.)

APPEAL from the Court of Appeals for Mercer County, No. 10-93-18.

————————————

{¶ 1} Appellant, Lee Ann Snyder, was employed as a teacher at Mendon-Union Local Schools, now Parkway Local Schools, for nine years. Snyder taught vocal and instrumental music to students in grades kindergarten through twelve, and served as the band director under a supplemental contract. During the 1990-1991 school year, appellee Mendon-Union Local School District Board of Education ("Board"), employed Snyder under an expiring limited contract. Snyder was eligible to be considered for a continuing contract beginning with the 1991-1992 school year.

{¶ 2} In 1990, the Board and the Mendon-Union Education Association ("Association") entered into a collective bargaining agreement ("CBA") which was in effect through August 20, 1992. Under its terms, all teachers who were "up for contract renewal" were to be "observed" twice, once per semester. Each

observation was to last at least thirty minutes. That provision of the CBA differs from the dictates of R.C. 3319.111(B), which requires a total of four thirty-minute observations, two for each of two evaluations in the school year in which the board may declare its intention not to re-employ the teacher.

{¶ **3**} During the 1990-1991 school year, Snyder was observed only twice by Dr. Tucker Self, the superintendent of the Mendon-Union Local Schools ("Superintendent"), who was also the principal of the high school. He observed her on January 8, 1991, and on March 27, 1991. The March 27, 1991, observation lasted significantly less than thirty minutes.

{¶ **4**} Both of Self's evaluations of Snyder were favorable. On March 28, 1991, he wrote to Snyder and informed her that both he and the County Superintendent would recommend Snyder to the Board for a continuing contract.

{¶ **5**} Around that time, Snyder's band received an invitation to march in the Liberty Bowl Parade. Whether the band should accept the invitation became a community controversy. Expense was one issue—the trip would cost an estimated $12,000. Also, the trip would occur in the midst of Christmas vacation. On April 8, 1991, the Board voted against the trip, but did agree to reconsider its decision if the band's booster club agreed to raise the necessary funds.

{¶ **6**} Snyder found herself in the middle of the maelstrom in Mendon concerning the trip's merits. The club ultimately voted twice against sending the band to the Liberty Bowl.

{¶ **7**} On April 25, 1991, the Superintendent verbally informed Snyder that he would now recommend to the Board that it not renew Snyder's contract. The Superintendent's stated reason was that Snyder had been "stirring things up" concerning the Liberty Bowl trip.

{¶ **8**} On April 29, 1991, the Board voted to nonrenew Snyder's contract. On May 7, 1991, Snyder filed a grievance under the CBA which resulted in arbitration. Snyder grieved that she was entitled to relief under the terms of the

2

CBA and through the provisions of R.C. Chapter 3319. Her arbitration hearing was held on February 6, 1992, and the arbitrator issued his opinion and award on April 24, 1992.

{¶ 9} The arbitrator found that the superintendent's failure to observe Snyder for thirty minutes during his March 27, 1991, observation did violate the express terms of the CBA. However, the arbitrator found that error harmless, since the evaluation did not serve as the basis for Snyder's nonrenewal. The arbitrator did rule on Snyder's behalf on one issue, finding that the Board violated the CBA when it forced Snyder to take medical leave from May 13, 1991 through the end of the school year. The arbitrator ordered the Board to restore Snyder's accumulated sick leave from that time period.

{¶ 10} The arbitrator refused to decide Snyder's claims under R.C. 3319.11 and 3319.111, holding that under the terms of the CBA he did not have the authority to decide such issues. He ruled that Snyder's statutory claims could only be decided by a court of law, since his jurisdiction was limited to matters of contractual interpretation.

{¶ 11} Snyder had already asserted her statutory rights in another forum. R.C. 3319.11(G)(3) grants every nonrenewed teacher the right to a hearing before the Board. Snyder exercised that right and had a hearing before the Board on June 17, 1991. On June 24, 1991 the Board adopted a resolution which stated that it did not violate the CBA in nonrenewing Snyder.

{¶ 12} On July 24, 1991, pursuant to R.C. 3319.11(G)(7), Snyder appealed the Board's decision to the court of common pleas. R.C. 3319.11(G)(7) allows an appeal to the common pleas court on the grounds that the board has not complied with R.C. 3319.11 or 3319.111. During the pendency of Snyder's common pleas court appeal, the arbitrator issued his opinion and award. On May 21, 1992 Snyder filed the opinion and award with the common pleas court, and on July 2, 1992, applied to have the arbitrator's opinion and award confirmed.

**{¶ 13}** While Snyder's appeal of her statutory claim was still pending in the common pleas court, she filed a motion to amend her complaint by including a claim for intentional infliction of emotional distress. This claim was based on the conduct of the Superintendent in placing Snyder on extended sick leave and allegedly threatening her arrest if she attempted to return to work as a teacher.

**{¶ 14}** Both parties filed motions for summary judgment in the trial court. On August 3, 1993, the court ruled on the motions. The court agreed with the arbitrator that the arbitrator's authority did not extend to the issues raised under the applicable statutes, and found that the Board's evaluation of Snyder did not strictly comply with the statutory requirements of R.C. 3319.111(B)(2). However, the court found that the Board had substantially complied with the procedures required by R.C. 3319.111, and thus affirmed the Board's decision to nonrenew Snyder. The court also held that Snyder's motion to confirm the arbitration award was improper, since her appeal was governed by R.C. 3319.11 and 3319.111. Finally, the court denied Snyder's motion to amend her complaint to allow the emotional distress claim.

**{¶ 15}** Snyder appealed the trial court's decision to the Third District Court of Appeals. On March 25, 1994, the appellate court reversed the trial court on the confirmation issue. The appellate court wrote that "[e]xcept for those laws specifically exempted by R.C. 4117.10(A), the provisions of the collective bargaining agreement prevail over conflicting laws." The appellate court also noted that R.C. 4117.10(A) provides that "'if the agreement provides for a final and binding arbitration of grievances, public employers, employees, and employee organizations are subject solely to that grievance procedure * * *.'"

**{¶ 16}** Since the CBA contained an evaluation procedure and provided for binding arbitration, the court of appeals concluded that the arbitration prevailed over an action based upon R.C. Chapter 3319, and that the trial court thus erred in not considering whether to confirm the arbitration award pursuant to R.C. Chapter

2711. The appellate court found that Snyder's two other assignments of error, that the trial court erred in affirming the Board's nonrenewal and in not allowing her to amend her complaint, were moot.

{¶ 17} The cause is now before this court upon the allowance of a discretionary appeal.

_____

*Elsass, Wallace, Evans, Schnelle & Co., L.P.A.*, *Stanley R. Evans* and *Thomas A. Ballato*; *Benjamin F. Yale & Associates, Co.* and *Benjamin F. Yale*, for appellant.

*Scott, Scriven & Wahoff, Greg Scott and Julie C. Martin*; *Koch Law Offices* and *Kenneth Koch*; for appellee.

*Daniel S. Smith*, urging reversal for *amicus curiae*, Ohio Education Association.

_____

**PFEIFER, J.**

{¶ 18} Shortly after the appellate court rendered its decision in the present case, this court held in *Naylor v. Cardinal Local School Dist. Bd. of Edn* (1994), 69 Ohio St.3d 162, 630 N.E.2d 725, paragraph two of the syllabus, that "[u]nless a collective bargaining agreement specifically provides to the contrary, R.C. 3319.111 governs the evaluation of a teacher employed under a limited contract." The CBA in this case contained no such specific provision excluding or negating the statutory rights contained in R.C. 3319.111. Therefore, R.C. 3319.111 continued to govern the Board's evaluation of Snyder.

{¶ 19} R.C. 3319.111(A) provides that a board of education must twice yearly evaluate teachers under limited contracts before the board may determine whether to renew those teachers' contracts. One evaluation must be completed by January 15 and the second by April 1. Each evaluation must be based upon two observations, with each observation lasting at least thirty minutes. R.C.

3319.111(B)(2); *Farmer v. Kellys Island Bd. of Edn.* (1994), 69 Ohio St.3d 156, 159, 630 N.E.2d 721, 723. It is undisputed that Snyder was observed only twice, total. Also, as the arbitrator found, the March 27, 1991, observation lasted less than thirty minutes.

{¶ 20} The trial court found that while the evaluation procedures in this case "did not strictly comply with that [*sic* the] statutory requirements of R.C. 3319.111(B)(2)," the statutory requirements "were substantially complied with." The trial court's finding, however, was made without the guidance of *Farmer*. The trial court saw the question as, "whether the evaluation procedures followed by superintendent Self in relation to appellant Snyder included *observations* of her on at least *two* occasions for not less than thirty (30) minutes on each such occasion." (Emphasis added.) Therefore, the trial court found substantial compliance based upon its mistaken belief that R.C. 3319.111 required only two observations per year, rather than four.

{¶ 21} A board's decision to nonrenew is not valid if the board does not follow the dictates of R.C. 3319.111 in properly evaluating the teacher. R.C. 3319.111 was not designed to create an obstacle course for school boards to traverse before they can fire a teacher. The point of the requirements is positive—school boards and their administrators are forced to find out what is being taught in their classrooms and how it is being taught. The purpose of evaluations is to assist teachers in getting better. The club that exists to force school districts to perform evaluations properly does not mean that evaluations exist only to initiate the removal of bad teachers. They are of value to all. We therefore hold firm to the simple, specific dictates the General Assembly enacted regarding the evaluation of teachers.

{¶ 22} The failure of the board to comply with the observation requirements of R.C. 3319.111(B)(2) constitutes a failure to comply with the evaluation requirements of R.C. 3319.111(A). "Such a failure constitutes a ground upon

which a court reverses the board's decision not to re-employ [a teacher] under [ ] R.C. 3319.11(G)(7)." *Farmer*, 69 Ohio St.3d at 160, 630 N.E.2d at 724.

{¶ 23} Thus, pursuant to *Farmer* and R.C. 3319.11(B)(2), we reverse the court of appeals and reinstate Snyder for the 1995-1996 school year under an extended limited contract, and award her back pay from the time of the nonrenewal through the date of reinstatement. We remand the cause to the trial court to determine the amount of Snyder's damages. Lastly, we hold that the trial court did not abuse its discretion in denying Snyder's motion to amend her complaint nearly two years after her original filing.

*Judgment reversed*
*and cause remanded.*

MOYER, C.J., DOUGLAS, RESNICK and F.E. SWEENEY, JJ., concur.

WRIGHT AND COOK, JJ., dissent.

———————————

**COOK, J., dissenting.**

{¶ 24} I respectfully dissent from the majority decision.

{¶ 25} R.C. 3319.11(G)(7) does not mandate a court to order the board to reemploy a teacher when the court determines that the board has not complied with the evaluation procedures of R.C. 3319.111(A). Rather, R.C. 3319.11(G)(7) employs the discretionary language, "may order a board to reemploy a teacher." Although the *Farmer I* court stated that pursuant to R.C. 3919.11(G)(7), "a court should order the board to reemploy the teacher" where the board failed to comply with the evaluation procedures of R.C. 3319.111(A), this court did not address this discretionary language of the statute in either *Farmer I* or *Farmer II. Farmer v. Kelleys Island Bd. of Edn.* (1994), 69 Ohio St.3d 156, 160, 630 N.E.2d 721, 724 ("*Farmer I*"); *Farmer v. Kelleys Island Bd. of Edn.* (1994), 70 Ohio St.3d 1203, 638 N.E.2d 79 ("*Farmer II*").

**{¶ 26}** In the present case, the trial court held that while the board failed to strictly comply with the evaluation procedures, the "underlying reasons for the original appellee board's action to not re-employ appellant were not based upon those evaluations.  In fact, the evaluations by Dr. Self were the basis for his initial recommendation to the board to re-employ appellant.  Therefore, the court concludes that to order the appellee board to re-employ appellant would be improper, inequitable, and unjust." I would find that the trial court did not abuse its discretion in its decision.

W<small>RIGHT</small>, J., concurs in the foregoing dissenting opinion.

_____