[Cite as *Driver v. Jefferson Twp. Local School Dist. Bd. of Edn.*, 2012-Ohio-1570.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

ERNESTINE DRIVER                                   :

     Plaintiff-Appellee                         :          C.A. CASE NO. 24795

v.                                                 :          T.C. NO.    10CV5777

JEFFERSON TOWNSHIP LOCAL SCHOOL :               (Civil appeal from
DISTRICT BOARD OF EDUCATION                        Common Pleas Court)

    Defendant-Appellant                         :

                                       :

          . . . . . . . . . .

**O P I N I O N**

Rendered on the    6th    day of     April    , 2012.

          . . . . . . . . . .

PETER J. RAKAY, Atty. Reg. No. 0011385 and LAURA E. RAKAY, Atty. Reg. No. 0082440, 111 W. First Street, Suite 1100, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellee

NICHOLAS E. SUBASHI, Atty. Reg. No. 0033953, The Greene Town Center, 50 Chestnut Street, Suite 230, Dayton, Ohio 45440
        Attorney for Defendant-Appellant

          . . . . . . . . . .

DONOVAN, J.

    **{¶ 1}** Defendant-appellant Jefferson Township Local School District Board of

Education (hereinafter "School Board") appeals a judgment of the Montgomery County

Court of Common Pleas reversing the decision of the School Board not to renew plaintiff-appellee Ernestine Driver's teaching contract. The trial court also ordered the School Board to re-employ Driver and awarded her backpay for the period of time beginning when she was discharged through when she was re-employed. The trial court's decision was filed on August 1, 2011. The School Board filed a timely notice of appeal with this Court on August 30, 2011.

{¶ 2} Initially, we note that beginning in the 2007-2008 school year in Jefferson Township schools, The Pilot Teacher Evaluation Program (hereinafter "Pilot Program") was a teacher evaluation program created for implementation by the School Board. The Pilot Program divided the evaluation into three distinct phases. Driver was placed in Phase I of the Pilot Program because she had just begun teaching in Jefferson Township. The Pilot Program stated in pertinent part:

> The pilot program described on the following pages will be conducted during the 2007-2008 school year. *** [I]t will help prepare Jefferson Township teachers and administrators for formal adoption of the new program in the 2008-2009 school year. During the pilot program period all teachers will be evaluated annually in the phase of the program that is appropriate for them based on their years of experience in the district. The Jefferson Township Evaluation Committee will collect data across the two years for the purpose of making final decisions about the full

implementation of the program beginning in the fall for 2009.

*During the pilot program period the evaluation policies and process described herein will superceed* [sic] *state law (ORC 3319.11 and 3319.111) with regard to the teacher evaluation program.*

{¶ 3}   The School Board and the Board of Education also entered into the Collective Bargaining Agreement (hereinafter "CBA"), which was made effective beginning on July 1, 2008, through June 30, 2010, and which incorporated the Pilot Program evaluation procedures.   The CBA stated in pertinent part:

ARTICLE XXIX - TEACHER EVALUATION

If there is any conflict between this Article and R.C. 3319.11 and 3319.111, *the statutory law shall prevail*.   The official evaluation instrument of the Jefferson Township Schools shall be "The Jefferson Township Local Schools Pilot Teacher Evaluation Program."

{¶ 4}   Prior to her employment in Jefferson Township, Driver was a teacher for eleven years at Greenville and Tri-Village Schools in Ohio.   Driver was employed by Jefferson Township for two years prior to the School Board's decision not to renew her teaching contract in April of 2010.   Although it is unclear whether Driver was evaluated pursuant to statute or the provisions of the Pilot Program, the record establishes that she was evaluated twice during the 2009-2010 school year.   Both of Driver's evaluations were conducted by Principal Mattie White.

{¶ 5}   The first evaluation was conducted on November 11, 2009, and Driver

received a copy of Principal White's report on January 13, 2010. The second evaluation was conducted on March 11, 2010, and Driver received a copy of the evaluation report on March 14, 2010. Neither evaluation stated that Driver's performance was deficient regarding her teaching ability, nor did Principal White offer any suggestions concerning areas in which Driver needed to improve. Notably, the evaluations are reasonably complimentary of Driver's performance.

{¶ 6} On April 27, 2010, the Superintendent of Schools, Dr. Richard Gates, provided Driver with notice of the School Board's recommendation to not renew her teaching contract for the 2010-2011 school year. Driver subsequently requested a written statement from the School Board outlining the reasons for its recommendation for non-renewal of her contract. On May 13, 2010, Dr. Gates provided Driver with a letter explaining the basis for the School Board's recommendation. Upon receipt of the letter, Driver demanded a hearing before the School Board. On June 16, 2010, said hearing was held, and on June 21, 2010, the School Board issued a decision affirming its initial recommendation.

{¶ 7} We note that on October 11, 2010, the School Board filed supplemental evidence with the trial court primarily consisting of letters and school discipline referrals attempting to demonstrate Driver had extremely poor classroom management skills which placed her students' safety at risk. One of the letters was from Driver, herself, in which she apologized for using racial slurs and stereotypes when speaking with a black student. The evidence submitted also established that Driver lost her composure and left her classroom in a fit of frustration. Without specifically citing these events, Dr. Gates alluded to these

incidents in his generalized rationale in support of the School Board's decision to not renew Driver's teaching contract. It is important to note that none of the incidents detailed in the supplemental evidence were included in the two evaluations of Driver for the 2009-2010 school year.

{¶ 8} Driver appealed the School Board's decision to the Montgomery County Court of Common Pleas. In her administrative appeal filed on October 11, 2010, Driver argued that the School Board failed to comply with the evaluation procedures set forth in the Pilot Program that was incorporated into the CBA between the School Board and its employees. Driver further asserted that the evaluation procedures in the Pilot Program supersede the statutory requirements of R.C. 3319.11 and 3319.111 regarding non-renewal of teaching contracts, as well as the processes used to evaluate those teachers in danger of being dismissed. Driver contended that even if the evaluation provisions in the Pilot Program do not supersede the relevant statutes, the School Board also failed to comply with the statutory requirements such that she is entitled to reinstatement as a teacher and back pay.

{¶ 9} The School Board argued that the evaluation procedures in the Pilot Program/CBA did not supersede the relevant statutory provisions. Thus, the School Board asserted that it was not required to comply with the evaluation procedures set forth in the Pilot Program/CBA. The School Board contended that the statutory requirements in R.C. 3319.11 and 3319.111 govern teacher evaluations, and those requirements were complied with, thus precluding Driver from re-employment and/or back pay.

{¶ 10} Ultimately, the trial court reversed the decision of the School Board not to

renew plaintiff-appellee Ernestine Driver's teaching contract and ordered the School Board to re-employ Driver and awarded her backpay for the period of time beginning when she was discharged through when she was re-employed. Specifically, the trial court found that the School Board failed to comply with R.C. 3319.111(B) in evaluating Driver's performance, thereby vesting the court with jurisdiction to order the School Board to re-employ Driver. Lastly, the trial court found that Driver was, in fact, entitled to mandatory reinstatement and back pay as a result of the School Board's failure to comply with the statutory evaluation procedures.

{¶ 11} It is from this judgment that the School Board now appeals.

{¶ 12} Because they are interrelated, Driver's first and second assignments of error will be discussed together as follows:

{¶ 13} "THE COMMON PLEAS COURT ERRED BY FAILING TO FIND THAT THE JEFFERSON TOWNSHIP LOCAL SCHOOL DISTRICT BOARD OF EDUCATION COMPLIED WITH THE STATUTORY EVALUATION PROCEDURES."

{¶ 14} "THE COMMON PLEAS COURT ERRED BY FINDING REEMPLOYMENT UNDER R.C. 3319.11(G)(7) TO BE MANDATORY RATHER THAN DISCRETIONARY."

{¶ 15} Initially, we note that in an appeal of the trial court's administrative appeal decision, an appellate court does not review the administrative agency's action directly, but, instead, reviews the trial court's action and factual findings for an abuse of discretion. *Sturdivant v. Toledo Bd. of Edn.,* 157 Ohio App.3d 401, 407-408, 2004-Ohio-2878, 811 N.E.2d 581 (6th Dist.). The abuse of discretion standard, however, is not applied to the trial

court's determinations of law. Id., citing *In re Kralik*, 101 Ohio App.3d 232, 235-236, 655 N.E.2d 273 (10th Dist. 1995). Rather, an appellate court must determine, pursuant to R.C. 2506.04, whether, as a matter of law, the trial court has correctly applied the law to the facts as determined by the agency and the trial court. *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34, 465 N.E.2d 848 (1984).

{¶ 16} Additionally, R.C. 3319.11(G)(7) allows an appeal to the trial court only on the grounds that a board of education has not complied with R.C. 3319.11 or 3319.111. *Sturdivant*, 157 Ohio App.3d at 408, 811 N.E.2d 581. Where a CBA supersedes those sections, however, the standard of review is governed by R.C. 2506.04. Id. Under this standard, the trial court is obliged to consider the entire record, including any new or additional evidence admitted under R.C. 2506.03, and determines whether the law was properly applied and whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by a preponderance of substantial, reliable, and probative evidence. Id., citing *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147, 735 N.E.2d 433 (2000).

{¶ 17} In the instant case, we note that with respect to which evaluation procedures were to be followed, the relevant provisions in the Pilot Program and the CBA contradict each other. Specifically, the Pilot Program stated that its evaluation procedures would supersede R.C. 3319.11 and 3319.111. Conversely, the CBA stated in Article XXIX that if there was any conflict between it and R.C. 3319.11 and 3319.111, the statutory law would prevail. The trial court, however, found that it was unnecessary to address whether the provisions of the Pilot Program as incorporated into the CBA superseded R.C. 3319.11 and

3319.111. The trial court found that the School Board did not comply with either the Pilot Program or the relevant statutes regarding teacher evaluation. On appeal, neither party disputes the primary issue before the trial court. That is, whether the School Board complied with R.C. 3319.11 and 3319.111.

{¶ 18} In its first assignment of error, the School Board contends that the trial court erred when it found that the Board had not complied with the statutory evaluation procedures when it decided to not renew Driver's teaching contract in 2010. Specifically, the School Board argues that the clear and unambiguous language of R.C. 3319.11(G)(7) requires that the Board must only comply with the evaluation procedures set forth in R.C. 3319.111(A) when determining whether to renew a teaching contract. Moreover, the School Board asserts that it did, in fact, comply with the evaluation requirements set forth in R.C. 3319.111(A). Accordingly, the School Board asserts that it was not required to comply with R.C. 3319.111(B), and the trial court erred when it focused on that section of the statute. We note that the School Board does not dispute on appeal the trial court's finding that it did not comply with the teacher evaluation requirements set forth in R.C. 3319.111(B).

{¶ 19} R.C. 3319.11(G)(1)-(7) sets forth the procedure to be followed by a school district when it decides to not renew the contract of a limited contract teacher. In *Evans Marshall v. Bd. of Edn. of Tipp City Exempted Village School Dist.*, 2d Dist. Miami No. 03CA2, 2003-Ohio-4977, we stated as follows:

> R.C. 3319.11(G)(7) states that "[a] teacher may appeal an order affirming the
>
> intention of a board not to re-employ the teacher to the court of common pleas . . . *on the*

*grounds that the board has not complied with section 3319.11 or 3319.111 of the Revised Code.*" However, appeals pursuant to R.C. 3319.111 are limited to a determination of procedural errors. *A court can order a teacher to be re-employed only if it finds that a board of education has failed to evaluate a teacher in accordance with R.C. 3319.111,* or has failed to provide a teacher with timely notice of nonrenewal pursuant to R.C. 3319.11(B), (C)(3), (D)(4) or (E). The section further clearly states that the determination of whether or not to reemploy a teacher is at the board's discretion and not a proper subject of judicial review. (Emphasis added).

{¶ 20} R.C. 3319.111(A) provides that when a board of education enters into a limited contract with a teacher the board must evaluate that teacher in any school year in which the board may wish to declare its intention not to renew the teacher's contract. This evaluation is to be conducted at least twice in the school year in which the board may wish to declare its intention not to renew the teacher's contract. Id. Following the evaluation, the teacher is to be provided a written evaluation. Id.

{¶ 21} R.C. 3319.111(B) states:

Any board of education evaluating a teacher pursuant to this section shall adopt evaluation procedures that shall be applied each time a teacher is evaluated pursuant to this section. These evaluation procedures shall include, but not be limited to:(1) Criteria of expected job performance in the areas of responsibility assigned to the teacher being evaluated;

(2) Observation of the teacher being evaluated by the person

conducting the evaluation on at least two occasions for not less than thirty minutes on each occasion;

(3) A written report of the results of the evaluation that includes specific recommendations regarding any improvements needed in the performance of the teacher being evaluated and regarding the means by which the teacher may obtain assistance in making such improvements. R.C. 3319.111(B).

{¶ 22} Driver argued, and the trial court found, that the School Board failed to comply with R.C. 3319.111(B)(2) and (3), because she was only observed twice during the school year, only once for each evaluation. Moreover, the written reports failed to provide areas in Driver's performance needing improvement, respective recommendations, or the means by which assistance could be obtained in making any improvements.

{¶ 23} Our prior holding in *Evans Marshall* does not limit reinstatement of a non-renewed teacher to a situation where only a violation of R.C. 3319.111(A) exists. When a violation of the evaluation procedures set forth in R.C. 3319.111(B) has occurred, R.C. 3319.11(G)(7) vests the trial court with jurisdiction to order reinstatement of the teacher whose contract was not renewed. *Evans Marshall v. Bd. of Edn. of Tipp City Exempted Village School Dist.*, 2d Dist. Miami No. 03CA2, 2003-Ohio-4977. Our holding in *Evans Marshall* comports with the holdings of the Ohio Supreme Court in *Farmer v. Kelleys Island Bd. Of Edn.*, 69 Ohio St.3d 156, 630 N.E.2d 721 (1994) ("*Farmer I*"), and *Farmer v. Kelleys Island Bd. Of Edn.*, 70 Ohio St.3d 1203, 638 N.E.2d 79 (1994) ("*Farmer*

*II*"). In *Farmer I* and *II*, the Ohio Supreme Court held that the procedures set forth in R.C. 3319.111(B) must be followed by a school board in order to effectuate a statutorily proper evaluation prior to implementing the decision to non-renew a teacher's contract.

{¶ 24}  In the instant case, the School Board does not dispute the trial court's finding  that it failed to comply with the evaluation procedures set forth in R.C. 3319.111(B).  The School Board only asserts that it was not required to adhere to the requirements of R.C. 3319.111(B).  In light of the foregoing analysis, the School Board was clearly required to comply with the evaluation procedures set forth in R.C. 3319.111(B), and its failure to do so properly resulted in the reinstatement of Driver to her original teaching position.  "In resolving the instant appeal, we are guided by the standard that R.C. 3319.11 and 3319.111 are remedial statutes that must be liberally construed in favor of teachers." *Naylor v. Cardinal Local School Dist. Bd. of Edn.*, 69 Ohio St.3d 162, 630 N.E.2d 725 (1994).

{¶ 25}  In its second assignment, the School Board argues that the trial court erred by finding that the decision ordering re-employment of Driver was mandatory, rather than discretionary.  Specifically, the School Board points out that R.C. 3319.11(G)(7) states that "*** the court *may* order a board to reemploy a teacher *** when the court determines that evaluation procedures have not been complied with ***." Id.  Based on the statute's use of "may" rather than "shall," the decision to re-employ a teacher is discretionary, not mandatory.

{¶ 26}  In *Farmer I*, the Ohio Supreme Court stated in pertinent part:

The failure of the board to comply with the observation

requirements of R.C. 3319.111(B)(2) constitutes a failure to comply with the evaluation requirements of former R.C. 3319.111(A). Such a failure constitutes a ground upon which a court reverses the board's decision not to reemploy Farmer under to [sic] R.C. 3319.11(G)(7).

*** R.C. 3319.11(G)(7) provides that when a board of education improperly terminates a teacher by not complying with the evaluation procedures required by former R.C. 3319.111(A), *a court should order the board to reemploy the teacher*.

{¶ 27} The only court to have directly addressed the potential discretionary issue in R.C. 3319.11(G)(7) was the Eleventh District in *Tulley v. Wickliffe City Sch. Dist. Bd. of Edn.*, 11th Dist. Lake No. 95-L-014, 1996 WL 648743 (July 12, 1996), wherein the court concluded that once a procedural violation of R.C. 3319.111 has been established , a trial court was required to reinstate the teacher. We note that the Ohio Supreme Court chose not to accept *Tulley* for review. Id. at 77 Ohio St.3d 1494, 673 N.E.2d 149 (1996).

{¶ 28} Other than describing the *Tulley* decision as making no sense, the School Board fails to distinguish the case in any way. More importantly, the School Board fails to cite any case wherein a school district failed to comply with the statutorily mandated evaluation procedures, and a court did not order reinstatement of the improperly terminated teacher, either at the trial level or appellate level. Simply put, the School Board has not provided any legal authority wherein a court has exercised its discretion and refused to order

reinstatement. We note that to find that failure to comply with the evaluation procedures does not mandate re-employment would severely undermine the force and effect of the statutory requirements. In such a case, a teacher who was found to have been improperly terminated would have no real avenue for relief if reinstatement were not mandatory.

{¶ 29} Accordingly, we find that the trial court did not err when it found that its decision ordering Driver to be reinstated was mandatory, rather than discretionary.

{¶ 30} The School Board's first and second assignments of error are overruled.

{¶ 31} The School Board's third assignment of error is as follows:

{¶ 32} "THE COMMON PLEAS COURT ERRED BY ORDERING THE JEFFERSON TOWNSHIP LOCAL SCHOOL DISTRICT BOARD OF EDUCATION [TO] PAY ERNESTINE DRIVER BACKPAY WHILE JEFFERSON WAS IN FISCAL EMERGENCY."

{¶ 33} In its third assignment, the School Board argues that the trial court erred by awarding Driver back pay when Jefferson Township was in a state of fiscal emergency.

{¶ 34} At the time that the trial court issued its decision ordering that Driver be reinstated and awarded back pay, the School Board had not raised any issue regarding Jefferson Township being in a state of fiscal emergency. If Jefferson Township was in a state of fiscal emergency at the time when Driver was awarded back pay, that matter is outside the record in the instant appeal. Thus, we will not address the issue of Driver's award of back pay in regards to Jefferson Township's purported state of fiscal emergency.

{¶ 35} The School Board's fourth and final assignment of error is as follows:

{¶ 36} "THE COMMON PLEAS COURT ERRED IN HOLDING THAT

JEFFERSON MUST PAY BACK PAY TO ERNESTINE DRIVER WITHOUT SET OFF FOR INTEREST EARNINGS OR REDUCTION REFLECTING OTHER CIRCUMSTANCES LIMITING DRIVER'S ENTITLEMENT TO BACKPAY."

**{¶ 37}** "It is well settled that a public employee *** who is wrongly excluded from his position and sues to recover compensation for the period of exclusion is subject to have his claim reduced by the amount he earned, or in the exercise of due diligence, could have earned in appropriate employment during the period of exclusion." *State ex rel. Martin v. Columbus Dept. of Health*, 58 Ohio St.2d 261, 389 N.E.2d 1123 (1979).

**{¶ 38}** To the extent that the School Board is entitled to a set off regarding Driver's award of back pay, this matter is reversed and remanded to the trial court for a hearing in order to determine the amount of back pay to which Driver is entitled and to assess the amount, if any, of set off which would limit the amount that Driver could recover in back pay.

**{¶ 39}** The School Board's fourth assignment of error is sustained.

**{¶ 40}** The School Board's fourth assignment of error having been sustained, this matter is reversed and remanded to the trial court for a hearing to determine the amount of back pay to which Driver is entitled and the amount of set off, if any,

Jefferson Township is entitled to with respect to Driver's award of back pay. In all other respects, the judgment of the trial court is affirmed.

. . . . . . . . . .

GRADY, P.J. and HALL, J., concur.

Copies mailed to:

Peter J. Rakay
Laura E. Rakay
Nicholas E. Subashi
Hon. Dennis J. Langer